ORIGINAL

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

DEC 2 0 2010

CLERK, U.S. DISTRICT COURT
By_____
Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

GEORGE WATSON, §
    PLAINTIFF, §
     §
v. §  CIVIL ACTION NO. 4:10-CV-10-A
     §
MICHAEL J. ASTRUE, §
COMMISSIONER OF SOCIAL SECURITY, §
    DEFENDANT. §

## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE
## AND
## NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of

Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation

of the United States Magistrate Judge are as follows:

### FINDINGS AND CONCLUSIONS

A.    STATEMENT OF THE CASE

Plaintiff George Watson ("Watson") filed this action pursuant to Sections 405(g) and

1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the

Commissioner of Social Security denying his claims for disability insurance benefits[1] under Title

II and supplemental security income ("SSI") benefits[2] under Title XVI of the Social Security Act

("SSA"). In October 2007, Watson filed applications for disability insurance benefits and SSI

---

[1] Watson's insured status for disability insurance benefits expired on December 31, 2008. (Tr. 11.)

[2] With respect to applications for SSI, the first month for which SSI benefits can be paid is the month after the SSI application was filed regardless of how far back in time disability may extend. 42 U.S.C. § 1382(c)(7); 20 C.F.R. § 416.335.

1

benefits alleging that he became disabled on August 1, 2003. (Transcript ("Tr.") 9, 124-31.) His applications were denied initially and on reconsideration. (Tr. 9.) The ALJ held a hearing on March 12, 2009 and issued a decision on June 19, 2009 that Watson was not disabled. (Tr. 6-18, 19-64.) Watson filed a written request for review, and on November 20, 2009 the Appeals Council denied his request for review, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 1-4.)

B.      Standard of Review

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA. In addition, numerous regulatory provisions govern disability insurance and SSI benefits. *See* 20 C.F.R. Pt. 404 (disability insurance); 20 C.F.R. Pt. 416 (SSI). Although technically governed by different statutes and regulations, "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and SSI." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920 (2009). First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527, 416.972. Second, the claimant must have an impairment or

2

combination of impairments that is severe. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* §§ 404.1520(e), 416.920(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999). At steps one through four, the burden of proof rests upon the claimant to show that he is disabled. *Crowley,* 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen,* 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor

3

substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

C.    Issues[3]

1.    Whether the ALJ applied the correct legal standard in weighing the treating source opinion.

2.    Whether the ALJ erred in failing to develop the record by seeking additional information from Watson's treating physician.

3.    Whether the ALJ's determination as to Watson's mental residual functional capacity ("RFC") is supported by substantial evidence.

4.    Whether the ALJ properly incorporated all of the limitations he found supported in the record into the hypothetical question presented to the vocational expert.

D.    Administrative Record

1.    ALJ Decision

In her June 19, 2009 decision, the ALJ noted that Watson met the disability insured status requirements under Title II of the SSA through December 31, 2008, the date Waston was last insured for disability insurance benefits. (Tr. 11.) She stated that Watson had not engaged in any substantial gainful activity since August 1, 2003, his alleged onset date of disability. (*Id.*) The ALJ further found that Watson had the severe impairments of "history of partial colon resection and colostomy secondary to diverticulitis, hiatal hernia, depression, anxiety, poly-substance abuse, in remission." (Tr. 11.)

---

[3] The table of contents to Watson's brief indicates that there are two issues before the Court. Pl.'s Br., Table of Contents; *see also* Pl.'s Br. at 1, 9, 15. However, in the substantive portion of his brief, Watson discusses four separate issues. Pl.'s Br. at 9-17. Consequently, the Court will consider each issue separately.

4

Next, the ALJ held that none of Watson's impairments or combination of impairments met or equaled the severity of any impairment in the Listing. (Tr. 12.) As to Watson's physical RFC, the ALJ found that Watson could perform light work "except that he is limited to no more than occasional climbing, balancing, stopping, kneeling, crouching, or crawling." (Tr. 13.) As to Watson's mental RFC, the ALJ limited Watson "to simple work activities where interaction with the public and co-workers is incidental." (*Id.*) In making this determination, the ALJ went through the medical evidence in the record, stating, *inter alia*:

> As to claimant's alleged depression and anxiety, it is noted that his symptoms have generally been rated as mild to moderate by his treating psychiatrist. Claimant presented to MHMR on August 21, 2007 for treatment of alcohol and Lortab dependence. He was noted to endorse symptoms of sadness, crying spells, irritability, isolative behavior, anxiety around others, feelings of worthlessness, guilt, anhedonia, and decreased sleep, appetite, and energy. A mental status examination revealed no psychosis, no manic symptoms, and no suicidal or homicidal ideation. Claimant's mood was mildly dysphoric, with blunted affect. His memory was noted as intact, his intelligence as average, and his insight and judgment as fair. Claimant was diagnosed with a major depressive disorder and polysubstance dependence and prescribed psychotropic medication. Within a short time, claimant reported that the medication was helping, and that he was calmer and sleeping better. He continued, however, to complain of increased anxiety around people and requested Xanax. His physician was reluctant to prescribe Xanax, given its addictive nature, and other medication was prescribed. Progress notes reflect that claimant's symptoms, as revealed by the Quick Inventory of Depressive Symptoms (QIDS), were mild to moderate. On a scale of 0-27, his psychiatrist rated claimant's symptoms in January 2008 as a 2; as a 5 in March 2008; and as a 10 in July 2008 when he was off medications (on a scale of 0-27 per scoring sheet . . .). Progress notes consistently reflect that claimant denied auditory or visual hallucinations, manic symptoms, or paranoia. The undersigned notes that claimant's symptoms, as reported in the progress notes, are not consistent with the assessed GAF[4] score of 45,[5] which indicates

---

[4] A Global Assessment of Functioning or GAF score is a standard measurement of an individual's overall functioning level with respect to psychological, social, and occupational functioning. AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed. 1994) (DSM-IV).

[5] A GAF score of 41 to 50 reflects serious symptoms or any serious impairment in social, occupational, or school functioning. DSM-IV at 34.

serious symptoms. After March 2008, claimant missed several appointments and was noted as off medications, when he presented in July 2008 and in November 2008 with a depressed mood. Claimant testified that he had missed appointments due to lack of transportation, but that he currently had a Handitran bus pass.

A mental residual functional capacity questionnaire was completed on February 17, 2009 by claimant's treating psychiatrist, Dr. Anant Patel, who opined that claimant did not have the mental ability to perform even unskilled work activities and that claimant's symptoms were such that he was likely to miss more than four days of work per month. The undersigned has assigned little weight to Dr. Patel's opinions as it is not consistent with his treatment notes and is not supported by the objective medical evidence. Dr. Patel states that his opinion is based on claimant's continued severe depressive symptoms, with increased social withdrawal, crying episodes, and increased neurovegetative symptoms. As noted above, however, Dr. Patel consistently rated claimant's symptoms as mild to moderate, in the range of 2 to 10 on the QIDS-C scale of 1 to 27. Moreover, there is no evidence of neurovegetative symptoms in the medical evidence; nor are any such symptoms alleged by the claimant.

The undersigned is not persuaded that claimant's depression and anxiety render him unable to perform work activities on a sustained basis. The evidence clearly shows that his depressive symptoms have responded to medication. Although he may continue to experience some symptoms of social anxiety, he is able to maintain relationships with others and to be around groups of people with whom he is familiar. Based on evidence of claimant's continuing symptoms of social anxiety around strangers, as well as symptoms of mild to moderate depression, the undersigned finds that claimant is limited to simple work activities where contact with the public or coworkers is incidental to the performance of his duties.

The undersigned has considered the assessments of the State agency medical consultants pursuant to Social Security Ruling 96-6p. It is noted that the mental residual functional capacity assessment described above is consistent with that of the State agency, except that additional limitations have been added as a result of evidence presented at the hearing level. With regard to the State agency's assessment of claimant's physical capabilities, it is noted that new evidence warrants a finding that claimant has a severe impairment that imposes limitations on his ability to work.

(Tr. 15-16 (internal citations omitted).)

The ALJ opined, based on her RFC assessment and the testimony of the vocational expert ("VE") at the hearing, that Watson was not able to perform his past relevant work. (Tr. 16.) However, the ALJ found that there were a significant number of jobs in the national economy that Watson could perform; thus, he was not disabled. (Tr. 16-17.)

E.    DISCUSSION

1.    Evaluation of Treating Physician's Opinion

Watson claims, in essence, that the ALJ erred in rejecting the opinion of Anant Patel, M.D. ("Patel"), Watson's treating psychiatrist, without good cause and without applying the required factors in 20 C.F.R. § 404.1527(d).[6] Pl.'s Br. at 9-13. *See also* 20 C.F.R. § 416.927(d). From approximately January 2007 through December 2008, Watson was treated at the MHMR of Tarrant County and had several appointments with Patel. (*See* Tr. 718-70.) In a Mental RFC Questionnaire dated February 17, 2009, Patel stated that he had last seen Watson on February 17, 2008 and that he saw him every four to eight weeks. (Tr. 772; *see* Tr. 772-76.) Patel diagnosed Watson with severe, recurrent major depressive disorder without psychotic features, hepatitis C, asthma, and diverticulitis and gave Watson a GAF score of 45. (Tr. 772.) Patel found that Watson was experiencing a wide variety of signs and symptoms, including: (1) anhedonia or pervasive loss of interest in almost all activities; (2) appetite disturbance with weight change; (3) decreased energy; (4) feelings of guilt or worthlessness; (5) generalized persistent anxiety; (6) emotional withdrawal or isolation; (7) intense and unstable interpersonal relationships and

---

[6] Specifically, Watson cites to *Prieto v. Astrue*, 5:09-CV-065-BG, 2010 WL 1817229 (N.D. Tex. Apr. 1, 2010), in support of his argument that Patel's opinion was rejected without good cause. In *Prieto*, however, the Court noted that the ALJ "did not state what weight, if any, he was giving to Dr. Hood's opinion that Prieto could walk or stand for less than two hours in an eight-hour work day" and failed to apply the factors listed in 20 C.F.R. § 404.1527(d). *Id.* at *3. The instant case is distinguishable because, as discussed below, the ALJ did state that he was assigning "little weight" to Patel's opinion and did apply the factors listed in 20 C.F.R. § 404.1527(d).

impulsive and damaging behavior; (8) easy distractibility; and (9) sleep disturbance. (Tr. 773.) Patel further opined that Watson was unable to meet the competitive standards in all mental abilities and aptitudes needed to perform unskilled, semiskilled, and skilled work. (Tr. 774-75.) He found that Watson was seriously limited, but not precluded in his ability to: (1) interact appropriately with the general public; (2) maintain socially appropriate behavior; (3) adhere to basic standards of neatness and cleanliness; and (4) use public transportation. (Tr. 775.) Patel opined that Watson's impairments or treatments would likely cause him to be absent from work more than four days per month. (*Id.*) Patel further stated, "As per medical records severe depressive symptoms may preclude employment, maintain employment." (*Id.*)

Controlling weight is assigned to the opinions of a treating physician if well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995); *Bowman v. Heckler*, 706 F.2d 564, 568 (5th Cir. 1983). However, the determination of disability always remains the province of the ALJ, and the ALJ can decrease the weight assigned to a treating physician's opinion for good cause, which includes disregarding statements that are brief and conclusory, unsupported by acceptable diagnostic techniques, or otherwise unsupported by the evidence. *Leggett*, 67 F.3d at 566; *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). *See also* 20 C.F.R. §§ 404.1527(e), 416.927(e). Conclusory statements to the effect that the claimant is disabled or unable to work are legal conclusions, not medical opinions, and are not entitled to any special significance. *See id.*; *see also Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).

8

In *Newton v. Apfel*, the Fifth Circuit Court of Appeals held that "absent reliable medical evidence from a treating or examining specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)." *Newton*, 209 F.3d 448, 453 (5th Cir. 2000) (emphasis in original). Under the statutory analysis of 20 C.F.R. § 404.1527(d), the ALJ must evaluate the following: (1) examining relationship, (2) treatment relationship, including the length, nature and extent of the treatment relationship, as well as the frequency of the examination(s), (3) supportability, (4) consistency, (5) specialization, and (6) other factors which "tend to support or contradict the opinion." 20 C.F.R. § 404.1527(d); *see also* 20 C.F.R. § 416.927(d); Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *3 (S.S.A. July 2, 1996); SSR 96-2p, 1996 WL 374188, at *4 (S.S.A. July 2, 1996).[7]

In determining that Watson had the mental RFC to perform "simple work activities where contact with the public or coworkers is incidental to the performance of his duties," the ALJ reviewed the evidence in the record, including the opinions of Patel. (Tr. 15-16.) The ALJ ultimately assigned "little weight" to Patel's opinions, finding that it was not consistent with Patel's treatment notes and not supported by the objective medical evidence. (Tr. 15.) Prior to

---

[7] Pursuant to *Newton*, the ALJ is required to perform a detailed analysis of the treating physician's views under the factors set forth in 20 C.F.R. § 404.1527(d) *only* if there is no other reliable medical evidence from another *treating or examining* physician that *controverts* the treating specialist. *See Newton v. Apfel*, 209 F.3d 448, 455-57 (5th Cir. 2000). An ALJ does *not* have to perform a detailed analysis under the factors in the regulation "where there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another" as well as cases in which "the ALJ weighs the treating physician's opinion on disability against the medical opinion of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion." *Id.* at 458; *see Alejandro v. Barnhart*, 291 F. Supp. 2d 497, 507-11 (S.D. Tex. 2003); *Contreras v. Massanari*, No. 1:00-CV-242-C, 2001 WL 520815, at *4 (N.D. Tex. May 14, 2001) ("The Court's decision in *Newton* is limited to circumstances where the administrative law judge summarily rejects the opinions of a claimant's treating physician, based only on the testimony of a non-specialty medical expert who had not examined the claimant.")

making such a determination, the ALJ reviewed other medical evidence in the record, including the following: (1) MHMR treatment records dated August, 21 2007 showing that Watson was: (a) treated for alcohol and Lortab dependence; (b) having symptoms of sadness, crying spells, irritability, isolative behavior, anxiety around others, feelings of worthlessness, guilt, anhednoia, and decreased sleep, appetite, and energy; and (c) diagnosed with major depressive disorder and polysubstance dependence and prescribed psychotropic medication (Tr. 494-96); (2) treatment records showing that on August 28, 2007, only one week later, Watson reported that the medication was helping and that he was calmer and sleeping better (Tr. 642); (3) treatment records showing that he continued to complain of increased anxiety around people and was prescribed medication (*see, e.g.*, Tr. 570); and (4) progress notes from January 2008 to July 2008 showing that his Quick Inventory of Depressive Symptoms (QIDS) ranged from mild to moderate and that he consistently denied auditory or visual hallucinations, manic symptoms, or paranoia (Tr. 569, 745, 762). (Tr. 15.) In addition, the ALJ partially relied on a mental RFC assessment from State Agency Medical Consultant ("SAMC") Richard Alexander, M.D. ("Alexander"), in rejecting Patel's opinions.[8] (Tr. 16.) Because such evidence provides "good

---

[8] In a Psychiatric Review Technique Form ("PRTF") dated December 5, 2007, Alexander opined that Watson suffered from a major depressive disorder and "polysubstance dependence in recent remission per claimant" but that such impairments did not precisely satisfy the diagnostic criteria in sections 12.04 or 12.09 of the Listing. (Tr. 544, 549; *see* Tr. 541-554.) He further opined that Watson was mildly restricted in his activities of daily living and had moderate difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace. (Tr. 551.) In Section I, which was titled "Summary Conclusions," of a Mental Residual Functional Capacity Assessment ("MRFC") also dated December 5, 2007, Alexander opined that Watson was moderately limited in his ability to maintain attention and concentration for extended periods; make simple work-related decisions; complete a normal work-day and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and respond appropriately to changes in the work setting. (Tr. 555-58.) Watson further stated that Watson was markedly limited in his ability to understand, remember, and carry out detailed instructions. (Tr. 555.) In Section III of the MRFC, which was titled "Functional Capacity Assessment," Alexander stated: "Claimant can understand, remember, and carry out only simple instructions, make simple decisions, attend and concentrate for

10

cause" for rejecting Patel's opinion, the Court concludes that the ALJ did not err.

Furthermore, the Court finds that the ALJ did follow the statutory analysis before rejecting Patel's ultimate opinion that Watson did not have the mental ability to perform even unskilled work activities and that he was likely to miss more than four days of work per month. (Tr. 15.) Although the ALJ did not make an explicit finding as to each of the factors in 20 C.F.R. § 404.1527(d), her discussion of Patel's opinion shows that she considered each factor in reaching her decision to reject Patel's opinion that Watson was, in essence, disabled. To begin with, in her decision, the ALJ stated that she "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-30p." (Tr. 13.) As to factors one and two, it is apparent that the ALJ was aware of the examining relationship and treatment relationship between Patel and Watson as she specifically acknowledged that Watson's "treating psychiatrist" had rated the symptoms related to Watson's depression and anxiety as mild to moderate, and reviewed various times that Patel had treated or provided an opinion relating to Watson between March 2008 and February 2009. (Tr. 15.)[9]

As to factors three, four, and six, the ALJ indicated that she rejected Patel's ultimate opinion that Watson was disabled because she did not find such opinion was consistent with Patel's treatment notes and was not supported by the objective medical evidence. The ALJ noted that, although Patel stated that his opinion was "based on claimant's continued severe depressive symptoms," Patel "consistently rated claimant's symptoms as mild to moderate, in the range of 2

---

extended periods, interact adequately with co-workers and supervisors, and respond appropriately to changes in routine work setting." (Tr. 557.)

[9] In addition, the ALJ acknowledged the Mental RFC Questionnaire prepared by Patel, which contained information about Patel's and Watson's examining and treatment relationship. (Tr. 15.)

11

to 10 on the QIDS-C scale of 1 to 27." (Tr. 15.) The ALJ also pointed to evidence showing that Watson's depressive symptoms had responded to medication and he was able to maintain relationships with others and to be around people he was familiar with.[10] (*Id.*) In addition, the ALJ stated that he was partially relying on Alexander's mental RFC assessment, except that he was adding additional limitations based on evidence presented at the hearing. (Tr. 16.) As to factor five, the ALJ clearly recognized that Patel was a psychiatrist. (Tr. 15.) Because the ALJ did have good cause for rejecting Patel's opinion, specified the weight she was attributing to Patel's opinion, and went through the factors set forth in 20 C.F.R. § 404.1527(d) before rejecting Patel's opinion, the Court concludes that the ALJ did not err.

## 2. Duty to Develop the Record

The next issue is whether the ALJ erred in properly developing the record when she failed to seek additional information from Watson's treating physician prior to making her decision. In support of this argument, Watson states, "Here, the ALJ raised doubts about the consistency of Dr. Patel's treatment notes and the objective medical evidence, yet failed to recontact him." (Pl.'s Br. at 14.) Watson claims that "prejudice is shown here because more information and a properly evaluated treating source opinion could have reasonably led the ALJ to a different decision." (*Id.*)

---

[10] Watson argues that the ALJ incorrectly stated that there was no evidence of neurovegetative symptoms in the medical evidence nor that any such symptoms were alleged by Watson. (Tr. 15.) Specifically, Watson claims that Patel reported on at least two occasions that Watson had neurological deficits and sleep problems and that Watson testified that he suffered from paranoia, difficulties in socializing with others, and difficulties sleeping. Pl.'s Br. at 12-13, citing to Tr. 143, 718, 745. However, "[p]rocedural perfection in administrative proceedings is not required." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). The Court "will not vacate a judgment unless the substantial rights of a party have been affected." *Id.* Because, as discussed above, the ALJ properly evaluated Patel's opinions and substantial evidence supports the ALJ's decision, this inaccurate statement by the ALJ did not affect Watson's substantial rights.

The Fifth Circuit imposes a duty on the ALJ to fully and fairly develop the facts relative to a claim for benefits. *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000); *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). When the ALJ fails in this duty, he does not have before him sufficient facts on which to make an informed decision and his decision is not supported by substantial evidence. *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996); *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984). "Nonetheless, reversal is appropriate only if the claimant shows that he was prejudiced as a result of the insufficient record." *Hudspeth v. Astrue*, No. 4:09-CV-156-Y, 2010 WL 3033891, at *12 (N.D. Tex. July 2, 2010); *see Kane*, 731 F.2d at 1220. "To establish prejudice, a claimant must show that he 'could and would have adduced evidence that might have altered the result.'" *Brock*, 84 F.3d at 728 (citing *Kane*, 731 F.2d at 1220).

In this case, even assuming that the ALJ had a duty to further develop the record, Watson has failed to demonstrate prejudice as he has presented no evidence suggesting that he would have or could have adduced evidence that would have altered the ALJ's decision. Consequently, the Court concludes that the ALJ did not err in failing to recontact Patel or obtain additional evidence.

3. Mental RFC

The next issue is whether the ALJ's mental RFC determination is supported by substantial evidence. RFC is what an individual can still do despite his limitations.[11] SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996). It reflects the individual's maximum

---

[11] The Commissioner's analysis at steps four and five of the disability evaluation process is based on the assessment of the claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005). The Commissioner assesses the RFC before proceeding from step three to step four. *Id.*

remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. *Id. See Myers v. Apfel*, 23 8F.3d 617, 620 (5th Cir. 2001). A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule. *Id.* RFC is not the least an individual can do, but the most. SSR 96-8p, 1996 WL 374184, at *2. The RFC assessment is a function-by-function assessment, with both exertional and nonexertional factors to be considered, and is based upon all of the relevant evidence in the case record. *Id.* at *3-5. The responsibility for determining a claimant's RFC lies with the ALJ. *See Villa v. Sullivan*, 895 F.2d 1019, 1023 (5th Cir. 1990). The ALJ will discuss the claimant's ability to perform sustained work activity on a regular and continuing basis, and will resolve any inconsistencies in the evidence. *Id.* at *7.

In making an RFC assessment, the ALJ must consider all the symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, and must consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe. *See* 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *1 (S.S.A. July 2, 1996); SSR 96-8p, 1996 WL 374184, at *5. The RFC assessment is based upon "*all* of the relevant evidence in the case record," including, but not limited to, medical history, medical signs and laboratory findings, the effects of treatment, reports of daily activities, lay evidence, recorded observations, medical source statements, and work evaluations. SSR 96-8p, 1996 WL 374184, at *5 (emphasis in original). The ALJ is permitted to draw reasonable inferences from the evidence in making her decision, but the social security rulings also caution that presumptions, speculation, and supposition do not constitute evidence. *See, e.g.*, SSR 86-8, 1986 WL 68636, at *8 (S.S.A.

1986), superseded by SSR 91-7c, 1991 WL 231791, at *1 (S.S.A. Aug. 1, 1991) (only to the extent the SSR discusses the former procedures used to determine disability in children).

In this case, the ALJ found that Watson had the mental RFC to perform light work except that "he is limited to simple work activities where interaction with the public and co-workers is incidental." (Tr. 13. ) In making this determination, the ALJ, as discussed above, rejected the ultimate opinion of Patel that Watson was, in essence, disabled. (Tr. 15-16.) Instead, the ALJ relied upon other evidence in the record, including the treatment notes indicating that medication was helping, and that he denied auditory or visual hallucinations, manic symptoms, or paranoia, and that he was able to maintain relationships with others. (Tr. 15.) In addition, the ALJ partially[12] relied on the assessments performed by Alexander, the SAMC, who found, *inter alia*, that Watson had moderate difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace and could understand, remember, and carry out only simple instructions. (Tr. 16; *see* Tr. 541-58.) Based upon the above evidence in the record, the Court concludes that substantial evidence supports the ALJ's RFC determination. Consequently, remand is not required.

Watson argues that the "ALJ's RFC is not consistent with the RFC completed by the state agency consultant because the ALJ failed to include the limitations in Dr. Alexander's assessment." Pl.'s Br. at 15. Specifically, Watson claims the ALJ should have included the following limitations found by Alexander in Section I of the MRFC: (1) moderately limited ability to maintain attention and concentration for extended periods; (2) moderately limited

---

[12] Specifically, the ALJ stated, "It is noted that the mental residual functional capacity assessment described above is consistent with that of the State agency, except that additional limitations have been added as a result of evidence presented at the hearing level." (Tr. 16.)

ability to make simple work related decisions; (3) moderately limited ability to complete a normal work day or week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (4) moderately limited ability to accept instructions and respond appropriately to criticism from supervisors; (5) moderately limited ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and (6) moderately limited ability to respond appropriately to changes in the work setting. Pl.'s Br. at 15-16; *see* Tr. 555-57.

While the Court agrees that the ALJ did not specifically mention the limitations noted in Section I of the above-referenced MRFC, there is "nothing in the commissioner's regulations or rulings that requires an ALJ to make findings concerning each of the limitations listed [in Section I] on the 'Summary Conclusions' portion of the [MRFC] forms utilized by the SAMCs in assessing a claimant's mental residual functional capacity." *Huber v. Astrue*, No. 4:07-CV-477-A, 2008 WL 4694753, at *7 (N.D. Tex. Oct. 22, 2008). According to the Commissioner's Programs Operations Manual System ("POMS"), Section I of the MRFC, which contains the limitations that Watson claims should not have been left out of the RFC determination, is "merely a worksheet to aid [the medical consultant] in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment." POMS § DI 24510.060B.2. Section III of the MRFC "is for recording the mental RFC determination." POMS § DI 24510.060B.4. "It is in this section that the actual mental RFC assessment is recorded, explaining the conclusions indicated in section I, in terms of the extent to which these mental capacities or functions could or could not be performed in work settings." *Id.* Thus, based upon the MRFC form itself, it was not error for the ALJ to fail to

16

include or discuss the items from Section I of the MRFC in assessing Watson's mental RFC as they did not contain the actual opinion of Alexander as to Watson's RFC. Instead, it is Section III that contains the actual mental RFC assessment.

In Section III of the MRFC, Alexander opined: "Claimant can understand, remember, and carry out only simple instructions, make simple decisions, attend and concentrate for extended periods, interact adequately with co-workers and supervisors, and respond appropriately to changes in routine work setting." (Tr. 557.) Thus, according to Section III of the MRFC, Watson's only real limitation was that he needed to be limited to simple instructions, a limitation that the ALJ considered and included in her RFC determination when she limited Watson to "simple work activities."

Furthermore, even assuming that there is some inconsistency between the limitations noted by Alexander in the MRFC and the ALJ's RFC assessment, "[t]he ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record." *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) (citing *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)). In this case, the ALJ 1) properly considered and discussed the evidence in the record in assessing Watson's RFC, 2) adequately explained the reasoning for her RFC decision and for giving less weight to certain evidence, and 3) exercised her responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into her RFC assessment that were most supported by the record. *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991). Consequently, the ALJ did not err and remand is not required.

17

4. Hypothetical Question to the Vocational Expert ("VE")

Watson also argues, in essence, that the hypothetical the ALJ presented to the VE at the hearing and which she relied on in making her decision was defective because it did not contain all the limitations contained in Section I of Alexander's MRFC. Pl.'s Br. at 16. Watson claims that when Watson's attorney presented a hypothetical to the VE that included all the limitations contained in Alexander's MRFC, the VE responded that "Watson would not be able to maintain competitive employment." Pl.'s Br. at 17. "Therefore, had the ALJ included the limitations, as he [sic] purports to do, the disability determination would have reasonably been different based upon the VE testimony." *Id.*

A vocational expert is called to testify because of his familiarity with job requirements and working conditions. *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995) (citing *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986)). The ALJ is not required to incorporate limitations into the hypothetical questions presented to the VE that he did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988). The hypothetical presented to the vocational expert must reasonably incorporate all of the disabilities recognized by the ALJ's residual functional capacity assessment, and the claimant or his representative must be afforded the opportunity to correct any deficiencies in the ALJ's question. *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). If the ALJ's hypothetical fails to incorporate all such functional limitations, the ALJ's determination is not supported by substantial evidence. *Id.*

18

In this case, the ALJ determined that Watson had the RFC to perform light work,[13] except that he was not to do more than occasional climbing, balancing, stooping, kneeling, crouching, or crawling and was limited to simple work activities with only incidental interaction with the public and co-workers. (Tr. 13.) During the hearing, the ALJ asked the VE to consider the following hypothetical:

> If you had a hypothetical individual of Mr. Watson's age, education, and work experience, who is limited to lifting no more than 20 pounds occasionally, 10 pounds frequently, occasional postural maneuvers, limited to simple work in which interaction with the public and coworkers is incidental to the work, standing, walking up to 6 hours a day, sitting up to 6 hours a day.

(Tr. 61.) Based on this hypothetical, the VE testified that Watson was not capable of performing his past relevant work but that there were other jobs available that he could perform. (Tr. 61-62.)

In the hypothetical question that the ALJ asked the VE, the ALJ properly incorporated all the functional limitations that she had found in her RFC assessment into the hypothetical question. (*Compare* Tr. 13 *with* Tr. 61-62.) The ALJ was not required to incorporate the additional limitations suggested by Alexander in section I of the MRFC because the ALJ did not find that these limitations were supported by substantial evidence. Because the ALJ properly incorporated all the functional limitations that she had found in her RFC assessment into the hypothetical question and the RFC determination is supported by substantial evidence, as discussed above, the Court finds that the ALJ did not present a defective hypothetical to the VE.

---

[13] Light work involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b); 20 C.F.R. § 416.967(b). In addition, "a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.*

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

### NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

### ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until **January 4, 2011** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

20

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED December 20th, 2010.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE